FRANCIS KAISE ET AL. v. HANS J. LAWSON.

1. Proof that the parents emigrated to Texas, and lived together as man and wife, is sufficient to establish the heirship of the children of the parties until the contrary is proven.
2. A judgment will not be reversed, though the charge be erroneous, unless it appears that the verdict was affected by such erroneous charge.

APPEAL from Galveston. Tried below before the Hon. George E. Mann.

Appellants, on the twentieth of May, 1869, filed their suit in the District Court, as heirs of John M. Korner,

against Hans J. and Mary Lawson, alleging that Korner was, on the first of June, 1863, the lawful owner of certain personal property, consisting of cattle, horses, tools, etc., amounting in value to $1995, and continued the owner thereof until the day of his death, ninth of August, 1863; that a former wife of Korner, and appellants, were the only parties entitled to take said property as heirs of Korner; and that the said former wife, Lisette, left the State in March, 1853, and never returned to live with her husband, or to claim her interest in the property; that from June to October, 1863, defendants conspired, together with other unknown persons, to defraud them of their rights in said property, and in September thereafter wrongfully appropriated the same—defendants pretending that Mary Lawson had been married to Korner on the seventh of June, 1863, and as surviving wife, had a right to the disposition of said property, and did sell it to the defendant, Hans J., for valuable consideration; that said pretended marriage was void and fraudulently procured—Korner at that time being the husband of Lisette.

On the twenty-ninth of June, by an amendment, plaintiffs alleged recent marriage of defendant, Mary Lawson, to one Johnson, and made Johnson a party. On the second of July, 1869, defendant, Hans J. Lawson, filed an amended answer, alleging that if the sale was made as alleged by plaintiffs, he bought innocently, for value and without notice; that the plaintiffs, children of Korner, were bastards, born out of lawful wedlock, and therefore without any right to relief. The jury gave plaintiffs a judgment for $3513.95. On motion, a new trial was awarded, and December succeeding the court overruled defendant's demurrer, and the cause was submitted to the jury, who gave defendant a verdict, upon which judgment was entered.

The evidence upon plaintiffs' part was that Korner came to Galveston with the mother of plaintiffs, and witnesses supposed, from the family living together, that she was the wife of Korner; that the mother died shortly after her arrival at Galveston, some sixteen years before the trial, and Korner married one Lisette, who left him in 1853; that Korner owned cows, horses, etc., and the stock sold by defendant, Mary Lawson, to Hans J. Lawson, after Korner's death.

One witness testified that Mary Lawson lived with Korner some years before their marriage. Plaintiffs proved that a marriage ceremony was performed between Korner and Mary in June, 1863, and that a divorce suit, brought years before by Korner against his second wife, Lisette, was pending at the time. None of plaintiffs' witnesses proved the time of Korner's acquisition of the property sued for; whether before or after the marriage with Mary Lawson. Defendants proved that in 1860 Korner and Mary lived together as man and wife; they had some such property as described in petition; they bought cattle during that year. Witness understood the purchase was made with Mary's own money, brought by her from Germany; was so informed by both Korner and wife. Korner refused to sell any of the cattle because they belonged to his wife. The "Korner stock" was sold to defendant, Hans J. Lawson, and one Craft, on the sixteenth of December, 1864, by said Mary and her then husband, Peter Johnson, for $500, and Craft sold to Hans J., twenty-ninth of February, 1866—bills of sale in both cases being duly recorded.

*H. W. Hays*, for appellants.

*McLemore & Hume*, for appellee.

OGDEN, J.—There is manifest error in the first clause

of the charge of the court to the jury, arising no doubt from a misunderstanding of the facts as proven upon the trial. It is claimed by plaintiffs below, and not denied, but admitted by defendants, that the mother of appellants died some eleven years before the marriage ceremony between Korner and Mary Lawson in 1863. There is also error in the first part of the charge to the jury in assuming that the facts, as proven, could possibly have raised a reasonable doubt in the minds of the jury that appellants were the lawful heirs of John M. Korner.

The facts most clearly show that Korner emigrated to Texas from Germany with a wife and four children; that they all lived together as one family, and that Korner recognized them as his wife and children until the time of his death. These facts are sufficient, beyond controversy, to establish the heirship of appellants, until the contrary is proven; and there was no legitimate testimony introduced upon the trial to raise a contrary presumption, and even the allegation in their original petition could hardly convince a reasonable mind that they intended to allege their own illegitimacy.

There is error in the last clause of the charge of the court wherein the jury are instructed in effect, that if Korner was unmarried at the time of his marriage with Mary Lawson, and if Mary Lawson (or Mary Johnson) sold the property after the death of Korner, then the plaintiffs have no cause of action, and the verdict must be for the defendants, thus making the plaintiffs' right to recover dependent upon the question of a legal marriage, and the subsequent sale of the property, whereas the law gives the surviving wife or husband the right to sell only one-third of the personal property of the deceased husband or wife.

But the most material error in the charge of the court is, it fails to present to the minds of the jury, in clear and

intelligible language, the precise questions raised by the law, and the testimony as adduced on the trial. There is no testimony showing what became of any of the personal property after the death of John M. Korner, excepting the stock of cattle. As the cause had been dismissed as to all the defendants excepting H. J. Lawson, who, under the testimony, could at most be held responsible only for the value of the cattle purchased by him, it would therefore seem that the charge of the court should have called the attention of the jury exclusively to the law in relation to the liability of Hans J. Lawson for the value of that stock of cattle. There is no evidence that the brand of the cattle was ever recorded, and the cattle were therefore simply personal property which might be transferred by any person having legal possession of the same; and a *bona fide* innocent purchaser, without notice of any adverse right or claim, for a valuable consideration paid, would receive a good title to the property. The evidence in this case shows Hans. J. Lawson to be such a purchaser, and he is not therefore responsible to appellants for the value of the stock of cattle he has once bought and paid for in good faith, even if it were the property of John M. Korner at the time of his death.

But we think the testimony in this case clearly establishes the fact that the cattle were bought with the money of Mary Lawson, and were her property, recognized as such by Korner during his life, and left in her possession, and subject to her control at the time of his death. She had full authority therefore to sell and make a good title to the purchaser of that stock of cattle, and the purchaser in no sense became responsible to appellants for the value thereof. It would seem that the jury arrived at this conclusion from the facts, since they rendered a verdict for the defendant. It is therefore clear that the errors in the

charge of the court did not mislead the jury into finding an erroneous verdict; and as the verdict is in accordance with the law and the testimony, and as the judgment follows the verdict, we do not deem it our duty to inquire, very critically, what effect the charge had upon that verdict, or by what process of reasoning the jury arrived at the conclusion they did. The judgment is affirmed.

AFFIRMED.